IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:19-00239

RICKY L. HOUDERSHELDT, D.O.

**MEMORANDUM OPINION AND ORDER**

Presently pending before the Court is a "Motion to Suppress and Motion for *Franks* Hearing" filed by Defendant Ricky L. Houdersheldt, D.O. on February 18, 2020. *Def.'s Mot.*, ECF No. 45. The Government filed a Response in Opposition on February 25, 2020, *Resp. in Opp'n*, ECF No. 51, and the Court held a hearing on March 2, 2020 to entertain argument on Defendant's Motion, *See Mot. Hr'g*, ECF No. 53. Following the hearing, the Court granted leave for Defendant to file a Supplemental Motion by March 9, 2020. *Supplemental Mot.*, ECF No. 55. The issues have been fully and capably briefed, and the Motion is ripe for review. For the reasons set forth below, the Court **DENIES** the Motion in its entirety.

**I. BACKGROUND[1]**

On September 18, 2019, a grand jury sitting in Charleston, West Virginia returned a six-count indictment against Defendant Ricky Houdersheldt, a doctor of osteopathic medicine who maintains an active and eponymous medical practice in Putnam County. *Indictment*, ECF No. 1, at 1; *Resp. in Opp'n*, at 2. The charges stemmed from Defendant's alleged violations of 21 U.S.C. § 841(a)(1), which makes it unlawful to distribute controlled substances outside a range of narrow

---

[1] Obviously enough, these facts have not been proven to a jury and are provided here merely as a summary of the documentary evidence before the Court at this stage of Defendant's case.

exceptions.[2] The indictment lists six occasions between June and November of 2018 wherein Defendant allegedly issued prescriptions for controlled substances to a patient identified as "D.L." in non-office settings ranging from Dollar General to the Hurricane City Park. *Indictment*, at 2.

The Government originally filed the indictment under seal, and a warrant for Defendant's arrest was issued the same day. On September 24, 2019—the same day Defendant's arrest warrant was executed—Sergeant Jason S. Crane of the West Virginia State Police [3] submitted an Application for a Search Warrant to Magistrate Judge Cheryl A. Eifert for approval. *See* No. 3:19-mj-00067, *Application for a Search Warrant*, ECF No. 3, at 1. The proposed warrant covered Defendant's office, located at 3705 Teays Valley Road in Hurricane, West Virginia, and sought records related to the pending charges against Defendant and the charts and medical information of fifty-two named individuals that investigators had identified as particularly relevant to their investigation.[4]

---

[2] Specifically, the indictment charged Defendant with distributing a controlled substance "not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice." *Indictment*, at 1–2.

[3] Crane has been "federally deputized by the Drug Enforcement Administration as a Task Force Officer for the Tactical Diversion Squad." *Crane Aff.*, ECF No. 3-1, at ¶ 2.

[4] In his affidavit, Sergeant Crane explained that "[e]ach of those patients is included in that list for one or more of the following reasons:" that "[t]he patient was identified as/by an interviewed witness," "[t]he patient was identified through [the Prescription Drug Monitoring Program ("PDMP")] as there being a high level of certainty that after review of medical records, once obtained if they exist, that Dr. Houdersheldt failed to meet these requirements in prescribing these dangerous medications," "[t]he patient was identified through PDMP as having obtained multiple prescriptions for opiates and/or for the 'Holy Trinity' (a drug regimen that includes at least one opioid, a benzodiazepine, and carisoprodol)," "[t]he patient was a patient of Dr. Houdersheldt who received multiple prescriptions for Schedule II controlled substances," or "[t]he patient died within 30 days of filling a prescription from Dr. Houdersheldt." *Crane Aff.*, at ¶¶ 22. The Court registers its concern with respect to the first and last of these criteria, which are surprising in their breadth and ambiguity. For example, that a patient is merely "identified as/by an interviewed witness" tells a reviewing magistrate judge nearly nothing about why—or how—their medical information is of particular relevance. *See id.* While the Court recognizes that "warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation," *United States v. Moody*, 9313 F.3d 366, 372 (4th Cir. 2019), the importance of

Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, Crane appended an affidavit in support of the warrant to his Application. *Crane Aff.*, ECF No. 3-1. Totaling twenty-three pages and twenty-nine numbered paragraphs, the Affidavit begins with a recitation of Crane's background and the law applicable to this case. *Id.* at ¶¶ 1–11. Crane then proceeds to detail his investigation of Defendant, which has its roots in an interaction between Defendant and a local police officer on November 20, 2018. *Id.* at ¶ 13. On that day, Officer Timothy Duran of the Hurricane Police Department discovered Defendant and a woman identified as D.L. in a parked Cadillac Escalade in the Hurricane City Park. *Id*. Duran observed D.L. exit the vehicle with a prescription for twenty-one tablets of Tylenol-4, a Schedule III controlled substance that contains codeine. *Id*. Defendant explained that he "met with [D.L.] to write [her] mother a controlled substance prescription." *Id.* Duran concluded that this claim was false after he matched the name and birthdate on the prescription with D.L.'s state driver's license. *Id.* D.L informed Duran that she met with Defendant outside his office to obtain prescriptions on "multiple occasions," and that she would simply call Defendant on his cell phone to set up a meeting location. *Id.*

A subsequent review of the West Virginia Board of Pharmacy's Prescription Drug Monitoring Program ("PDMP") revealed that Defendant had written a bevy of prescriptions for D.L. over the previous three years, including for "1) Amphetamine, a Schedule II controlled substance, 2) Hydrocodone, a Schedule II controlled substance, 3) Suboxone, a Schedule III controlled substance, 4) Oxycodone, a Schedule II controlled substance, and 5) Lorazepam, a Schedule IV controlled substance." *Crane Aff.*, at ¶ 14. At an interview on September 14, 2019, D.L. identified specific instances where she had met Defendant outside his office for prescriptions.

---

specificity in preparing an application for a warrant should nevertheless be underscored.

She also told investigators that Defendant "never performed a medical examination during the six times that he wrote [D.L.] prescriptions for controlled substances." *Id.* at ¶ 15.

In addition to Defendant's prescription practices with respect to D.L., Crane outlined several other pieces of supporting evidence in his Affidavit. He noted that seventeen patients had died within thirty days of receiving a final prescription from Defendant. *Id.* at ¶ 17. He also claimed that another patient—identified only as "Patient A"—reported that Defendant would force her to perform sexual favors in exchange for prescriptions and cash. *Id.* at ¶ 18. Finally, he noted Defendant's history of prescribing dangerous combinations of drugs. *Id.* at ¶¶ 19–20. Specifically, Crane pointed to a 2013 investigation into his failure to maintain adequate records after prescribing a patient a risky combination of hydrocodone and Suboxone. *Id.* at ¶ 19. He also noted similar occasions where patients residing at the same address were receiving identical prescriptions for controlled substances. *Id.* at ¶ 20.

On January 7, 2020, the Charleston Grand Jury returned a superseding indictment against Defendant. *See Superseding Indictment*, ECF No. 25. The superseding indictment contained the same six counts with respect to prescriptions written for D.L., but eleven new counts with respect to prescriptions written for a patient identified as B.W. and six new counts with respect to prescriptions written for a patient identified as R.W.[5] *Id.* at 2–3. Defendant followed with the instant Motion on February 18, 2020, to which he attached a memorandum of law in support of his Motion and an affidavit by a private investigator, Larry O'Bryan. *See Mem. in Support of Def.'s Mot.*, ECF No. 45-1; *O'Bryan Aff.*, ECF No. 45-2. Before turning to a consideration of the Motion, the Court will undertake a brief review of the legal framework that will govern its analysis.

---

[5] All counts were raised under 21 U.S.C. § 841(a)(1).

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Carrying this command into effect, Rule 41 of the Federal Rules of Criminal Procedure provides that "[a]fter receiving an affidavit or other information, a magistrate judge . . . must issue [a] warrant if there is probable cause to search for and seize a person or property . . . ." Such an affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

There is a strong "presumption of validity with respect to [an] affidavit supporting [a] search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1983). Nevertheless, in *Franks v. Delaware* the Supreme Court "carved out a narrow exception to this rule." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). Specifically, the Court held that where a defendant can support "allegations of deliberate falsehood or of reckless disregard for the truth" with an offer of proof, *Franks*, 631 F.3d at 171, he or she is "entitled to an evidentiary hearing on the veracity of statements in the affidavit," *Allen*, 631 F.3d at 171. If a Court concludes that "a *Franks* hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (quoting *Franks*, 438 U.S. at 156).

To obtain a hearing, "a defendant must make a 'substantial preliminary showing' that (1) law enforcement made 'a false statement'; (2) the false statement was made 'knowingly and intentionally, or with reckless disregard for the truth'; and (3) the false statement was 'necessary

to the finding of probable cause.'"[6] *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (quoting *United States v. White*, 850 F.3d 667, 672 (4th Cir. 2017)). As "allegations of 'negligence or innocent mistake are insufficient, . . . . [t]he burden of making the necessary showing is thus a heavy one to bear.'" *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008).

"The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence." *Moody*, 931 F.3d at 370. Put slightly differently, "there must be evidence showing that the statements at issue are objectively false." *Id.* The second required showing is similarly rigorous, requiring an accused to demonstrate "intentional falsity or reckless disregard for the truth."[7] *Id.* at 371. Once again, "[t]his showing 'must be more than conclusory' and must be accompanied by a detailed offer of proof." *Colkley*, 899 F.3d at 300 (quoting *Franks*, 438 U.S. at 171). With respect to the final showing, "the defendant must show materiality—that is, that the false statements were 'necessary to the finding of probable cause.'" *Moody*, 931 F.3d at 371 (quoting *Franks*, 438 U.S. at 156). In assessing materiality, courts will strip the allegedly false statements from an affidavit and determine whether the remaining portion of an application would still support a finding of probable cause. *Id.* If the answer is yes, a *Franks* hearing—to say nothing of suppression—is unavailable. *See Colkley*, 899 F.3d at 300.

---

[6] This three-factor approach stands in slight contrast to the great weight of prior *Franks* analyses within the Fourth Circuit, which have typically described the test "as two-pronged." *See United States v. White*, 850 F.3d 667, 673 (4th Cir. 2017). The tests are substantially the same—both include intentionality and materiality prongs—but the three-factor approach separately considers whether a challenged statement is actually false. Here, the Court will simply assume the falsity of each statement and base its analysis on the intentionality and materiality of the challenged portions of Crane's Affidavit.

[7] The "intent" prerequisite for a *Franks* hearing means something more than "intent" in its weaker sense—that is, something more than an act done "knowingly" or "purposefully." *See Colkley*, 899 F.3d at 300–01. Instead, a defendant must show that a challenged portion of an affidavit was included or omitted with the "design to mislead." *Id.* at 301 (emphasis removed).

As a final matter, the Court notes that "[d]efendants may bring *Franks* challenges both when an affidavit contains a false statement and when the affiant has omitted material facts from the affidavit." *United States v. Wharton*, 840 F.3d 163, 167 (4th Cir. 2016). "Understandably, the defendant's burden in showing intent is greater in the case of an omission because "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" *United States v. Lull*, 824 F.3d 109, 115 (4th Cir. 2016). Even if a defendant can demonstrate the requisite intentionality or recklessness in the omission of certain information, he must still demonstrate that probable cause would be defeated by its inclusion. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 628 (4th Cir. 2007). It is this legal framework that controls the Courts consideration of the pending Motion.

### III. DISCUSSION

Defendant's Motion challenges three particular portions of Crane's Affidavit: (1) the omission of statements by D.L. in which she denied ever claiming that the prescription was for her mother and in which she claimed all her prescriptions were medically legitimate and supported by examinations, (2) the inclusion of any allegations concerning Patient A, and (3) the inclusion of information about the deaths of Defendant's patients within thirty days of receiving a prescription. For the sake of analytical clarity, the Court will assume—without concluding—that each of the above statements is "false" within the meaning of *Franks*. Even with this generous reading of Defendant's Motion, he has plainly failed to demonstrate either intentionality or materiality with respect to any challenged portions of the Affidavit.

### A. Patient D.L.

The core of Defendant's *Franks* allegations with respect to Patient D.L. is that Crane recklessly omitted D.L.'s "repeated" denials that she told Officer Duran that the prescription had

been written for her mother, and that these omissions were material.[8] *See Mem. in Support of Def.'s Mot.*, at 2. Defendant also argues that Crane omitted D.L.'s explanations that "she had been treating with Defendant" and that "she never suggested that her prescriptions were for other than legitimate medical purposes." *Id.* at 2. Both arguments are unavailing, and fall short on both the intentionality and materiality prongs of the *Franks* test.

With respect to intentionality, it is well established that "the mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987). In recognition of this rule, *Franks* only "protects against omissions that are *designed to mislead,* or that are made in *reckless disregard of whether they would mislead,* the magistrate." *Colkley*, 899 F.2d at 300 (emphasis in original). Put plainly, Defendant has made no showing that Officer Crane possessed the requisite intent to mislead. The gist of Crane's Affidavit is that Defendant wrote and delivered prescriptions to D.L. at unusual locations under odd circumstances. Beyond these irregularities, Crane asserts (and Defendant does not challenge) that on one occasion he "offered to drive [D.L.] into the country to engage in a sexual relationship." *Crane Aff.*, at ¶ 15. Even when placed in the worst possible light, Crane's decision to omit some details of his conversations with D.L. cannot be considered anything more than negligence—itself a doubtful proposition. This falls "far short of the level of flagrant police action *Franks* is designed to prevent." *Id.* at 301.

---

[8] The Court has reviewed the transcript of a recording made by Officer Duran during his interview of D.L. at the Hurricane City Park. *Def.'s Ex. 6*, ECF No. 55-6. While the recording does not contain any explicit statement claiming the Tylenol-4 prescription was for D.L.'s mother, D.L. explained that she agreed to meet Defendant at the park "[b]ecause . . . Mom had fallen." *Id.* at 7–8. She also claimed that Defendant provided her with his personal phone number "in case [she] needed him with Mom." *Id.* at 7. While it is unclear when exactly Duran's interview with D.L. begins or when and how her mother became relevant, it is clear enough that D.L.'s mother was implicated at some point in the course of their conversation.

Yet Defendant's argument would fail even if this were not the case. In assessing the materiality of omissions, courts "'insert the facts recklessly [or intentionally] omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected warrant affidavit establishes probable cause,' there is no *Franks* violation." *Wharton*, 840 F.3d at 163 (quoting *Miller*, 475 F.3d at 628). Inserting details about D.L.'s after-the-fact denials in this case would have little (if any) discernable impact on a magistrate judge's probable cause analysis. Indeed, the Affidavit does not claim that D.L. ever told Duran the prescription was for her mother; instead, it simply states that "*Dr. Houdersheldt* told Officer Duran that he met with [D.L.] to write [D.L.'s] mother a controlled substance prescription."[9] *Crane Aff.*, at ¶ 13 (emphasis added). As the omissions of D.L.'s denials do not directly contradict the Affidavit or cast doubt on Defendant's own alleged untruth, they are simply immaterial.

### B. Patient A

Defendant next challenges the single paragraph of Crane's Affidavit that references Patient A, who claims she and Defendant exchanged sexual favors for controlled substance prescriptions in 2009. *Crane Aff.*, at ¶ 18. Once again, Defendant fails to make the substantial showing of intentionality and materiality necessary to justify a *Franks* hearing.

Defendant argues extensively that Officer Crane was at least reckless in failing to pursue further investigation into Patient A's allegations before including them in his Affidavit. *See Mem. in Support of Def.'s Mot.*, at 2–4. He outlines a number of steps he believes Crane should have

---

[9] Although Defendant claims that "[t]he statement attributed to Officer Duran that I told him I had written a prescription for D.L.'s mother is absolutely untrue," *Def.'s Ex. 4*, ECF No. 55-4, at 1, Officer Duran clearly recalled their conversation differently. *Pl.'s Ex. 1*, ECF No. 51-1, at 1. In any event, Defendant's subsequent denial does not alter the Court's analysis of the materiality of D.L.'s subsequent statements regarding the content of her interview with Duran and the legitimacy of Defendant's prescription practice.

taken to verify Patient A's claims, including interviewing Defendant's office staff or checking Patient A's Medicaid records. *Id.* at 3–4. These may well be valid investigative techniques that an officer could employ in similar circumstances, but the question for this Court is much narrower than whether Crane did everything he possibly could have to validate Patient A's claims. Instead, the Court is confined to examining whether the inclusion or omission of certain facts from an affidavit is the product of a "deliberate falsehood or reckless disregard for the truth." *Franks*, 438 U.S. at 171. Defendant has produced no evidence tending to demonstrate that Crane deliberately included false information about Patient A in his Affidavit in order to mislead Magistrate Judge Eifert. Nor has Defendant demonstrated that Crane acted with a degree of recklessness that would necessitate a *Franks* hearing. Simply put, mere allegations that an affiant could theoretically have taken further investigative steps—which might or might not contradict an informant—before applying for a search warrant is insufficient to require a *Franks* hearing.

Of course, Defendant's reliance on Patient A's allegations is misplaced for an even clearer reason: it is immaterial to the broader probable cause analysis. While Defendant vigorously contests the factual allegations regarding Patient A that are contained in the Affidavit, these allegations are limited to a single eleven-line paragraph under the heading "Additional Evidence." *Crane Aff.*, at ¶ 18. Even without inclusion of this short paragraph, Magistrate Judge Eifert was still confronted with a plethora of information supporting probable cause. *Inter alia*, the remainder of the Affidavit references Defendant's suspicious encounter with Officer Duran, *id.* at ¶¶ 12–13, myriad controlled substance prescriptions to D.L., *id.* at ¶ 14, D.L.'s allegations that Defendant had prescribed her controlled substances in irregular circumstances before, *id.* at ¶ 15, and a history of risky prescription practices, *id.* at ¶ 19. The probable cause analysis requires courts to consider the totality of the circumstances in any given case, as "probable cause is a fluid concept—turning

on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Applying this standard to the remaining portions of the Affidavit, it is clear that Magistrate Judge Eifert's probable cause determination would not have been materially altered had allegations regarding Patient A been excluded from Crane's Application for a Search Warrant.

### C. Patient Deaths

Defendant's final challenge stems from another portion of the "Additional Evidence" section of Crane's Affidavit, which claims that "PDMP data also reveals 17 Dr. Houdersheldt patient deaths within 30 days of the last prescription written to them by Dr. Houdersheldt." *Crane Aff.*, at ¶ 17. Defendant contends that this statement wrongly "implies a causal connection" between his patients' prescriptions and their deaths and "is, taken at its best, misleading." *Mem. in Support of Def.'s Mot.*, at 4. Defendant's point is well-taken; the Court is unclear as to what relevance such a broad and conclusory assertion could have for the purposes of authorizing a search warrant. Nevertheless, Defendant once again fails to make the substantial showing of intentionality and materiality necessary to support a *Franks* hearing.

To begin, Defendant has not alleged that the statement is literally false. It appears undisputed that seventeen of Defendant's patients actually died within thirty days of receiving a final prescription from him. His challenge appears to center on the lack of any context for the statistic. Yet beyond Defendant's own conclusory rhetoric, he offers no evidence that Crane acted knowingly or intentionally to mislead Magistrate Judge Eifert. There is similarly no indication that Crane acted recklessly in failing to provide context for the statement. Once again, the most that can be said is that Crane acted negligently in drafting the Affidavit without support for the statistic he cites. Moreover, Defendant has not demonstrated that the inclusion of any context—or the

exclusion of the statistic itself—would be likely to alter Magistrate Judge Eifert's probable cause determination. As noted earlier, the Affidavit contains abundant information from which a neutral magistrate judge could conclude that probable cause existed here.

To conclude, Defendant has failed to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. Crane's Affidavit—like many others—is not perfect. A more thorough investigation into Patient A's allegations may well have been prudent, and a more detailed explanation of the referenced patient deaths would have been similarly sensible. Yet the Court is mindful that affiants are not trained as lawyers, and an officer's affidavit ought not be "judged as an entry in an essay contest." *United States v. Harris*, 403 U.S. 573, 579 (1971) (quoting *Spinelli v. United States*, 393 U.S. 410, 438 (1969) (Fortas, J., dissenting)). Defendant's Motion is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's "Motion to Suppress and Motion for *Franks* Hearing," ECF No. 45, and **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: March 10, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE