IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.   CRIMINAL ACTION NO. 3:19-00239

RICKY L. HOUDERSHELDT, D.O.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are three post-trial motions by Defendant Ricky Houdersheldt. Defendant's first two motions seek to compel production of government records in relation to Defendant's post-trial *Brady* claims. ECF No. 188; ECF No. 193. The third motion seeks an order requiring the Government to show cause as to why Assistant United States Attorneys Kilby MacFadden and Andrew Barras should not be disqualified. ECF No. 190. The Government responded to each motion in its Omnibus Response (ECF No. 202), and Defendant replied (ECF No. 213). The motions are now ripe for review. For the following reasons, the motions are **DENIED**.

**I. MOTIONS TO COMPEL**

Defendants are permitted to make discovery requests related to post-trial claims under *Brady v. Maryland*, 373 U.S. 83 (1963). *See Love v. Johnson*, 57 F.3d 1305, 1313 (4th Cir. 1995). A defendant may exercise this right even where he or she "only suspects that particular information exists which meets *Brady*'s requirements." *Id*. Under such circumstances, a defendant "need only . . . make some plausible showing that [the information] does exist and how it would be both material and favorable to his defense." *Id*. (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)) (internal quotes omitted). The defendant must "identify the requested confidential material with some degree of specificity." *Id.* The specificity requirement "ensures that the government's *Brady*

1

obligations do not become unduly burdensome, and that the discovery request is not a groundless fishing expedition." *United States v. Abdallah*, 911 F.3d 201, 218 (4th Cir. 2018) (internal quotations and citations omitted).

Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Ritchie,* 480 U.S. at 57 (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "Evidence may be 'favorable' in the required sense not only when it tends substantively to negate guilt but also when it tends to impeach the credibility of a key witness for the prosecution." *Love*, 57 F.3d at 1313 (citing *Giglio v. United States,* 405 U.S. 150, 154 (1972)). Once a defendant makes a plausible showing, the court cannot deny a defendant's request for in camera review on the sole grounds that the government represents that the requested evidence is not material or favorable. *Abdallah*, 911 F.3d at 219 (citing *United States v. King*, 628 F.3d 693, 702 (4th Cir. 2011)).

The Fourth Circuit recently applied the above rules in *Abdallah*, 911 F.3d 201. In that case, the defendant sought in camera review of a draft exchange regarding the defendant's interrogation report because he believed that it contained evidence that he invoked his right to remain silent. *Id*. at 218. The Fourth Circuit found that the defendant met the above elements by identifying the evidence with specificity. *Id*. The court also held that the defendant showed that the records plausibly contained materially favorable information because there were several inconsistencies between the final interrogation report and the drafting officers' notes and grand jury testimony. *Id*. at 219. The court concluded that the district court erred in denying the defendant's request "solely based upon [the government's] representation that there would not be exculpatory information in the officers' emails pertaining to the drafting of the report." *Id*.

In another case, the defendant argued that the district court erred in denying his request for

2

in camera review of a witness' grand jury testimony. *King*, 628 F.3d at 702-03. The defendant reasoned that the testimony plausibly contained exculpatory evidence because the witness played a "pivotal role in the trial" and the defendant testified extensively that the witness "set him up." *Id*. at 704. The Fourth Circuit agreed and concluded that the district court erred by relying on the government's representations that the testimony did not contain exculpatory evidence. *Id*. at 702.

### 1. Motion to Compel Prosecution Team Communications

Defendant seeks to "compel the government to produce **all** electronic communications (including texts, emails, and voicemails) of **all** members of the prosecution team for in camera inspection." Def.'s Br. 1-2, ECF No. 189 (emphasis in original). In short, Defendant argues that this broad discovery request is justified under *Brady* because "there is simply no way that [the prosecutors investigated the case] without electronic communication passing back and forth; and there is no way that an objective review of those communications would determine that they are entirely free from discoverable information." *Id*. at 11-12.

These arguments do not meet the above standard. Unlike the defendants in *Abdallah* and *King*, Houdersheldt does not request evidence with any degree of specificity, nor does he give a plausible explanation as to why the information may be exculpatory. Instead, he speculates that, given the size of the prosecution team and notwithstanding its response, there must be discoverable communications among them. Defendant's argument does not even meet the "meager" showing in *Ritchie*. *See Love*, 57 F.3d at 1313 (citing *Ritchie*, 480 U.S. at 58). In that case, the defendant requested a particular file from a state agency. The Supreme Court held that it was plausibly exculpatory because the file related to the conduct described in the indictment and the credibility of the victim's testimony. *Ritchie*, 480 U.S. at 57-58. Defendant has made no such showing. Rather, Defendant's request is akin to the "groundless fishing expedition" that the Fourth Circuit

expressly prohibits. *See Abdallah*, 911 F.3d at 218 (citing *King*, 628 F.3d at 703).

Defendant argues that his request is justified because the Government's claim that it does not possess any other *Brady* material is undermined by its prior misrepresentations regarding D.L.'s continued use of opioids, Defendant's alleged bond violation, and the Government's claim that Sheriff Mullins would testify against Defendant. Def.'s Br. 13-16, ECF No. 189. These allegations of prosecutorial misconduct do not justify a blanket authorization to inspect all of the prosecution's communications. The Court agrees with Defendant that prior prosecutorial misconduct may be relevant insofar as the court relies on the Government's representation that the requested evidence does not contain exculpatory evidence. However, the Court does not rely on any such representations in denying Defendant's request. Defendant's request is deficient because it fails to identify material evidence with specificity. Moreover, stating that there is "simply no way" that the Government has disclosed all *Brady* material is not enough to show that their communications are both material and favorable. These deficiencies cannot be remedied by allegations that are irrelevant to Defendant's post-trial *Brady* claims. The Government's misrepresentations regarding D.L.'s opioid use and Defendant's bond conditions were addressed before trial. Likewise, the Government's alleged representation that Mullins would testify against Defendant at trial, even if true, does not indicate that the Government is suppressing evidence. Accordingly, the Court denies Defendant's request as to the prosecutorial team's communications.

**2. Motion to Compel Records of Witness Interactions**

Defendant's second motion requests all evidence related to (A) threats or promises made to D.L. in exchange for her testimony, and (B) the Government's discussion with Sherriff Michael Mullins. Def.'s Br. 1-2, ECF No. 194. Defendant argues that this information was both favorable and material, and therefore, the Government violated *Brady* by not disclosing it. Defendant also

requests an evidentiary hearing "[t]o the extent that the government denies the existence of such materials. Def.'s Mot., ECF No. 193.

A. Implied Non-Prosecution Agreement

At the outset, the Court notes that failure to disclose evidence of a tacit or implied agreement can serve as the basis of a *Brady* violation. Although the Court is not aware of any Fourth Circuit precedent extending *Brady* to tacit agreements, at least four other circuits have held exactly that.[1] Therefore, Defendant's request is not necessarily improper. That said, Defendant has not made a plausible showing that evidence of a tacit agreement exists.

Defendant asserts that the Government promised not to prosecute D.L. on two grounds in exchange for her testimony. First, Defendant argues that the Government's choice not to prosecute D.L. for receiving the prescriptions from Defendant indicates that it reached an agreement with D.L. However, the record does not indicate that D.L. was ever the target of an investigation. D.L. was never mirandized, and although the transcript of her interviews show that the agents pressured her to disclose more information, they do not indicate that she was ever directly threatened with prosecution. Second, Defendant argues that the Government's choice not to prosecute D.L. for receiving opioid prescriptions from a dentist is proof of a tacit agreement. However, after the prescribing dentist was investigated by the Government and deposed by the Defendant, the Government determined that there was insufficient evidence that the prescriptions were improper. Omnibus Resp. 34-36, ECF No. 202; *see* Spears Depo., ECF No. 203-1. Accordingly, it is implausible that there was a non-prosecution agreement based on those prescriptions. Finally, both

---

[1] *See, e.g., Bell v. Bell*, 512 F.3d 223, 233 (6th Cir. 2008) ("The existence of a less formal, unwritten or tacit agreement is also subject to Brady's disclosure mandate."); *Wisehart v. Davis*, 408 F.3d 321, 324 (7th Cir. 2005)("Express or tacit, either way there would be an agreement, it would be usable for impeachment, and it would have to be disclosed to the defense.") *Douglas v. Workman*, 560 F.3d 1156, 1186 (10th Cir. 2009)("Like the majority of our sister circuits, we conclude that Brady requires disclosure of tacit agreements between the prosecutor and a witness.")(citing *Bell*, 512 F.3d 223); *United States v. Rodriguez*, 766 F.3d 970, 988 (9th Cir. 2014).

D.L. and Agent Crane testified that there was no agreement between D.L. and the Government. Although not determinative, the testimony corroborates the above evidence and weighs against granting Defendant's motion. In sum, because Defendant has failed to show that material evidence of an agreement plausibly exists, the Court denies his request for in camera review.

B. Sheriff Mullins Call

The Government's investigation of Defendant can be traced back to November 20, 2018, the day that Hurricane Police Officer Timothy Duran saw Defendant and D.L. in a Hurricane City Park parking lot. During that encounter, Officer Duran testified that D.L. stated that she was picking up a prescription from Defendant but was acting suspiciously. Trial Tr. Vol. 1 44:3-10, ECF No. 174. Shortly after the encounter, Defendant called Michael Mullins, the Chief of the Hurricane Police Department and Defendant's longtime patient. On March 11, 2020, Agent Crane spoke with Mullins. The Government asserts that Crane called Mullins to confirm that the November 20, 2018 call with Defendant occurred and that Mullins was the person who answered the call. During its closing, the Government characterized the call as improper, stating:

> Ladies and Gentlemen, the first thing he did, the first call he made was to Chief Mullins, Hurricane Police Department Chief Mullins. He called Duran's boss immediately after running into him. He knew he could get the chief on the phone because he had his cell phone number at the ready. He was preparing his escape, and he needed to figure out his story quick. If you didn't have anything to hide, why would you be calling the chief of police after hours, after his detective had just rolled up on you?

Trial Tr. Vol. 5 1037:6-15, ECF No. 178.

By June, 2020, when the reverse proffer was made by the Government to the defense, if not earlier, Defendant knew that Mullins may be called as a witness to testify about Defendant's cell phone call to Mullins after the encounter with Duran. A few months after the trial, Defendant's investigator contacted Mullins and learned about his conversation with Crane. According to the

investigator, Mullins told Crane on the March 11, 2020 call that Defendant did not ask him to interfere in the Government's investigation or make any other improper requests. Rather, Defendant only reported that Duran was "rude and intimidating." Maza Aff. ¶ 12, ECF No. 185-11. Defendant argues that this call should have been disclosed to him because it contradicts the Government's closing. Despite the Government's arguments to the contrary, Mullin's description of the call arguably appears to contradict the Government's argument that Defendant called Mullins for an improper purpose. Accordingly, Defendant has made a plausible showing that Mullins' statements to Crane were material and favorable.

Nevertheless, despite this showing, Defendant is not entitled to discovery because his underlying *Brady* claim is deficient. The "suppression" prong of *Brady* requires a criminal defendant to proactively investigate before he can claim evidence has been withheld. As the Fourth Circuit held in *Hoke v. Netherland*, 92 F.3d 1350 (4th Cir. 1996), "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine." *Id*. at 1355. In other words, the "[G]overnment has no *Brady* burden when facts are available to a diligent defense attorney." *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990) (citing *Lugo v. Munoz*, 682 F.2d 7, 9-10 (1st Cir. 1982)).

As the Government correctly noted, "Defendant concedes that he had direct access to Mullins." Omnibus Resp. 46, ECF No. 202. Defendant acknowledges that he knew Mullins personally and knew how to contact him. In fact, Defendant learned about the March 11, 2020 call from Mullins himself, albeit after the trial. Maza Decl. ¶ 7, ECF No. 185-11. Defendant also acknowledges that he believed that Mullins would testify against him at trial. Def.'s Mem. in Supp. Mot. for Acq. 93, ECF No. 186. Therefore, one would have reasonably expected Defendant to

7

interview Mullins before trial. Defendant did not. Accordingly, he is not entitled to post-trial discovery regarding the Mullins call because his underlying *Brady* claim fails.

## II. MOTION REGARDING ATTORNEY DISQUALIFICATION

On October 8, 2020, Defendant filed his "Renewed Motion for Judgement of Acquittal or Dismissal or, in the alternative, a New Trial." ECF No. 185. In that motion, Defendant argues that he was deprived of a fair trial due to the Government's misconduct. In the present motion, the Defendant argues that this misconduct justifies disqualification of attorneys Kilby Macfadden and Andrew Barras because (1) they must be called as witnesses in post-trial proceedings and (2) should be sanctioned for their misconduct. The Government asserts that neither attorney's testimony will be necessary and that no sanctions are warranted.

**1. Disqualification Under West Virginia Code of Professional Conduct Rule 3.7**

Under Local Rule of Criminal Procedure 44.7, the applicable code of conduct for attorneys in the Southern District of West Virginia is the code promulgated and adopted by the Supreme Court of Appeals of West Virginia. Under West Virginia Code of Professional Conduct Rule 3.7,

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client."

This rule serves to protect the judicial system from the conflicts that arise when an attorney is asked to act as both a zealous advocate and an objective witness. Although the rule only addresses attorney testimony at trial, its purpose extends to other proceedings as well. As such, other courts have extended the rule to bench hearings. *See, e.g.*, *United States v. Dyess*, 231 F. Supp. 2d 493, 496 (S.D. W. Va. 2002) (citing *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 197 (1991)).

In *Dyess*, the court applied Rule 3.7 to a particularly "disturbing factual scenario" in which the Government failed to disclose evidence that "case agents and witnesses . . . stole drug proceeds, suborned perjury, lied under oath, and tampered with witnesses." *Id*. at 495. The court held that the defendants were likely to bring *Brady* claims and that those claims would require the court to examine "the time and place at which [the government] failed (because some degree of failure is now obvious). . ." *Id*. at 497. One such claim involved the government's failure to disclose evidence that the defendant's ex-wife and co-defendant had a romantic relationship with a case agent who encouraged her to lie during sentencing hearings. The court held that it was "unavoidable" that the lead AUSA would have to testify because there was a factual dispute about when she read a letter notifying her of the relationship. *Id*. at 496, n. 3. The court disqualified the entire Office of the United States Attorney for the Southern District of West Virginia because "at some point before the Government's disclosures, . . . [the relationship] became general knowledge." *Id*. at 497.

Here, Defendant argues that MacFadden and Barras' testimony will be required for four separate post-trial issues. However, as addressed below, the Court finds that none of these claims are availing.

i. False Information in the Search Warrant

Defendant argues that the Government's knowledge that the search warrant contained false information necessitates MacFadden and Barras' testimony. Def.'s Br. 5, ECF No. 191. Specifically, Defendant alleges that the search warrant contained the following incorrect statement: "Dr. Houdersheldt told Officer Duran that he met with [D.L.] to write [D.L.'s] mother a controlled substance prescription." Crane Aff. ¶ 13, ECF No. 185-1 (emphasis added). Defendant maintains that he never told Duran that the prescription was for D.L.'s mother, and that Crane intentionally misled the magistrate judge in violation of *Franks v. Delaware*, 438 U.S. 154, 171

9

(1983). Setting aside the merits of Defendant's argument, MacFadden and Barras' testimony is neither necessary nor unavoidable. Rather, Defendant's claim would require the testimony of Crane, who Defendant accuses of intentionally misleading the magistrate judge, or Duran, whose statements Crane relied upon in drafting the affidavit. Thus, the Court rejects Defendant's first argument.

    ii.    False Allegations that Defendant Violated Bond Conditions

Defendant next argues that MacFadden and Barras will be required to testify when they learned that the allegations regarding Defendant's bond violations were false. Def.'s Br. 5, ECF No. 191. Defendant asserts that this testimony is relevant to his claim that the Government "mislead the jury at trial to prevent it from learning of its own past misconduct." Def.'s Mem. in Supp. for Mot. for Acq. 97, ECF No. 186. Again, Defendant's argument fails because neither attorneys' testimony is necessary. Given that Crane was the one who notified the Government that the prescriptions were refills, he would be able to testify as to when that notification took place. Indeed, Defendant could have asked Crane that question at trial but did not. *See* Trial Tr. Vol. 2 228:8-15, ECF No. 177.

    iii.    Failure to Disclose BOP Records Regarding D.L. Before July

Defendant next seeks MacFadden and Barras' testimony regarding (1) why they failed to immediately provide D.L.'s Bureau of Pharmacy ("BOP") records in March and June, (2) why lied to the Court concerning those records, (3) how they discovered that they had received those records in March and June, despite stating that they had not received them prior to July 17, 2020, and (4) why they lied to the defense about D.L.'s continued opioid use. Def.'s Br. 5, ECF No. 191.

The Court finds that this testimony is not necessary because it has already addressed the Government's failure to produce these records and its related misrepresentations to the Court. *See* Hr'g Tr., ECF No. 170. The Court held a hearing on July 31, 2020, after the Government filed a

notice admitting that it had obtained the BOP records in March and June despite repeatedly telling the Court that it had not received the records before July. *See* Notice, ECF No. 111; Hr'g Tr. 19:12-17, ECF No. 170. During that hearing, the Court denied the Defendant's request for partial dismissal of the Indictment but allowed the Defendant to depose the prescribing dentist.[2] ECF No. 114. Because the Court has already issued an appropriate remedy for this misconduct, there is no basis for the above testimony. In addition, even if this issue had not already been resolved, the reasons for the Government's actions are immaterial. As the court aptly stated in *United States v. Burns*, "[c]ounsel's intent does not bear on whether a Brady violation occurred." No. 6:13-CR-00022, 2016 WL 3910273, at *7 (W.D. Va. July 14, 2016) (citing *Brown v. French*, 147 F.3d 307, 312–13 (4th Cir. 1998) and *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 559 (4th Cir. 1999)). Accordingly, the Court finds that this testimony is not necessary.

    iv.   Mullins Testimony

Finally, Defendant asserts that the AUSAs will be required to answer "[w]hy [] they lie[d] to defense counsel concerning the anticipated testimony of Hurricane Police Chief Mullins." Def.'s Br. 5, ECF No. 191. Even if the Court accepts that the Government lied to Defendant about Mullins testifying, Defendant has given no indication that this prejudiced him at trial or otherwise entitles him to relief. Therefore, the Court cannot conclude that testimony on this topic will be required.

**2. Sanctions**

Finally, Defendant argues that MacFadden and Barras should be disqualified as a sanction for their misconduct. Defendant submits the following allegations as grounds for the disqualification:

    i.   Duran and Crane "kidnapped" D.L. to interrogate her;
    ii.   Duran and Crane improperly pressured D.L. during her interrogation;

---

[2] A district court may not use its supervisory authority to dismiss an indictment for prosecutorial misconduct "not prejudicial to the defendant." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988).

      iii. DEA's interrogation of Defendant and subsequent arrest was illegal and improper;
      iv. Government misled the Magistrate Judge in warrant application;
      v. Government misled the Magistrate Judge in the January 24, 2020, bond revocation hearing; and
      vi. Government failed to disclose information regarding D.L.'s continued opioid use.

*See* Def.'s Br. 7-23, ECF No. 191.

    Disqualification for prosecutorial misconduct is a "drastic remedy" that is rarely granted. *United States v. Bolden*, 353 F.3d 870, 880 (10th Cir. 2003). Although the Fourth Circuit has addressed disqualification for a prosecutor's conflict of interest, the Court is not aware of any controlling precedent that provides a framework for disqualification as a sanction for prosecutorial misconduct. Other court decisions indicate that this sanction should be reserved for especially egregious and deliberate misconduct. For example, in *United States v. Omni Int'l Corp.*, the district court disqualified government attorneys for altering and creating of documents, offering false and incorrect testimony, and failing to maintain candor in colloquies with and testimony before district court. 634 F. Supp. 1414 (D. Md. 1986). Similarly, in *United States v. Burns*, the court disqualified the lead prosecutor for "misrepresentations, omissions, and evasions," that were "clearly" not inadvertent. 2016 WL 3910273, at *7; *cf. United States v. LaRouche Campaign*, 695 F. Supp. 1290, 1316 (D. Mass. 1988) (finding that disqualification would be an excessive sanction because the attorneys did not deliberately violate any disclosure obligations). In addition to requiring substantial and deliberate misconduct, the case law also indicates that "the district court must make attorney-specific factual findings and legal conclusions before disqualifying attorneys. . . ." *Bolden*, 353 F.3d at 880 (citing *Fullmer v. Harper*, 517 F.2d 20, 22 (10th Cir.1975)).

    Here, as serious as Defendant's allegations are, none are supported by the record or otherwise justify sanctions. First, Defendant asserts that Crane and Duran "kidnapp[ed]" D.L. Def.'s Br. 10, ECF No. 191. In support of this accusation, Defendant cites to D.L.'s testimony that

Crane and Duran picked her up from her mother's house and "told [her] [they] were going for a ride to Charleston, [but] didn't say where [they] were going or what [they] were going for." Trial Tr. Vol. 4 649:11-12, ECF No. 176. Although it was certainly inappropriate for the officers not to tell D.L. why they were picking her up, there is no evidence that MacFadden and Barras knew about this behavior. Defendant asserts that MacFadden and Barras must have "sanctioned" the "kidnapping" because the Government returned the indictment just eight days later. Def.'s Br. 10, ECF No. 191. This is a nonsensical assumption. Moreover, while an officer's knowledge is certainly imputed to the government's counsel for the purposes of *Brady* and *Giglio*, Defendant provides no authority that requires courts to attribute police misconduct to prosecutors for the purposes of sanctions. In fact, the case law requires the Court to make attorney-specific factual findings before imposing sanctions. *See Bolden*, 353 F.3d at 880. Consequently, the Court also rejects Defendant's claims regarding Crane's interrogation techniques and affidavit, and DEA agents' "pretextual interview" and "public arrest."

As for the remaining allegations regarding the January 24, 2020 bond revocation hearing and D.L.'s BOP records, Defendant has failed to demonstrate that MacFadden or Barras deliberately and egregiously violated their ethical obligations. Although Barras made meritless claims during the bond revocation hearing, wasted judicial resources, and needlessly caused Defendant to spend the night in jail, this does not rise to the level of deliberate misconduct that justifies disqualification. Likewise, although MacFadden falsely represented when the Government received D.L.'s BOP records, there is little evidence that this misrepresentation was deliberate or otherwise part of a pattern of misconduct. As such, the Court declines to impose sanctions.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motions to Compel (ECF Nos. 188, 193), and Defendant's Motion for a Show Cause Order (ECF No. 190).

The Clerk is **DIRECTED** to send a copy of this Order to defendant, all counsel of record, the United States Probation Office, and the United States Marshal.

ENTERED: December 3, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE